May it please the Court, Natalia Nekrasov for the Petitioners. I'd like to reserve two minutes for rebuttal. Okay. The primary issues in this case is the BIA credibility determination violation of due process and improper consideration of corroborative evidence. Yes, Your Honor, thank you. The primary issues is BIA credibility determination, violation of due process, and improper consideration of corroborative evidence. I wanted to start with the due process claim, as in this case, particularly the immigration judge, did not allow testimony of teenage respondents who were actual eyewitnesses to the accounts. And there's a prejudgment in the case because the immigration judge, before even finishing hearing the lead respondents back then, the petitioners at this point, testimony, he offered pre-hearing voluntary departure. That was even before he heard any of the witnesses. And when it was requested that the witnesses be, witness testimony be provided in order to clarify some inconsistencies that came up, some perceived inconsistencies, he disallowed the testimony. Yeah, this is the children that he refused to allow to testify. Yes, Your Honor. Not actual respondents and actual eyewitnesses in the case. Right, and he did so on the ground that they were not on a witness list. Yes, Your Honor, he provided two reasons, one of which is that they were not on the witness list. However, they are respondents and allowed to be at every hearing and present their testimony. They had claim of their own because they were tortured on their own and had a right to present that testimony. Also, the witness list included only the male lead and the aunt. He did not include the wife and yet he allowed the wife to testify. Also, right before the recess for the final hearing, it was brought to his attention that they would like two more witnesses whose testimony would not be very long. So for budgeting the time, he had all the opportunity to set the hearing to where he had enough time. Right, I saw that. The BIA determination of that issue is that there's no violation of due process or no prejudice because it was not shown that children's testimony would have remedied the discrepancies or have not been cumulative. The testimony would not be cumulative. You know, I'm apologizing for detaining you for too much time on that one. I think we have the point. Maybe the centerpiece here is even based on the record that we have, whether the adverse credibility finding is properly supported. Yes, Your Honor. As to credibility finding, it is our position that the BIA did limit the review of the credibility finding to the four incidents that they listed specifically because at the end of the four incidents, they stated that these discrepancies discussed above only are the sufficient major material and unexplained, which support adverse credibility finding. And that is in the BIA decision. The four incidents that are described by the board are not sufficient to support credibility finding. The very first one that they addressed did not even relate to the claim that the petitioners presented. It actually related to a relative's claim and relative situation. It was a cousin who had trouble and it was not related to a specific claim that the petitioner should not be used as credibility determination. Also, it was properly addressed by the petitioner by explaining in a logical manner as to how these events transpired. So there's no inconsistency for that particular incident. And the second incident that the BIA mentioned is the wife's medical treatment, which it's not an inconsistency, but just the petitioner provided further details as opposed to what was stated in the declaration. The declaration is not excluding further details because all it provides is that they stopped by the house and then went to the doctor's office. It does not preclude that the doctor might have visited them at first and then accompanied them to his own clinic where the treatment was performed. So just because she provided more details does not make her testimony inconsistent. Or his. I think the BIA is mostly focusing on the inconsistencies it's finding with respect to his testimony with regard to her treatment. Which is, his testimony in this case is that the doctor was in fact at the house when they arrived and then she was visited by the doctor both, she was taken to the clinic where treatment was performed as well as visited by the doctor in the house. Which is not inconsistent with the actual declaration which says that we stopped by the house and then went to the doctor's office. The doctor then did a follow-up exam one or two days later. It's not, it just provides more explanation, more detail. It's not inconsistent with the actual declaration. It's not, these details are not precluded from being provided at the hearing. So there's really no inconsistency is our position. Because there's also threat by prosecutor as also seems to be non-existent in the record. Because the statement, the declaration says that the prosecutor after hearing threatened him to his face. However, that's an English language expression. It's stated there and his oral testimony says that he was done in his presence. He was done in an open court which is not different from being said to his face. It was addressed to him even though he was behind the bars. He could hear that the threat is being made against him in the open court. And he only heard the first couple of words and then the rest were recited to him by his attorney who overheard the full statement. So it's not inconsistent with the declaration that says that the statement was made to his face. His further details show that he was in fact in his presence. However, he was not able to hear everything. He heard the threatening manner, he heard some of the words, the rest were relayed to him by his attorney. So it's not inconsistent with the actual declaration. Just clarifying and providing further details. And as far as the fourth inconsistency pointed out is the situation at the van where she provided consistent testimony with the declaration. The only thing that is different is that whether or not the van was already parked and men were standing next to it versus it stopped and they came out of the van. However, it's very logical for her not to pay attention to on the street to moving cars, stopped cars or parked cars because that's a normal situation. The only time that was brought to her attention is when these three men started moving towards her in a threatening manner. One of which went to get behind the wheel and the two of them grabbed her. That's not inconsistent with the declaration that three came out of the van and took him into the van. So it's very logical to only pay attention to when they started moving at them in a threatening manner, which is the only time they would notice them. Not if if they even if they were standing next to the van, that's when they suddenly came from the van and started moving towards them. OK, and those are the four issues raised by the VA. You're now down to just under two. Do you want to save the rest of your time and we'll hear from the government? Thank you. Thank you. May it please the court, my name is Gary Newkirk. I'm counsel for the respondent in turn general in this case. Can I ask you the same thing that we asked of your the other side? Speak up and slow down just a little bit. OK, Your Honor, you are correct. The central issue in this case is the adverse credibility determination by the immigration judge. We have some very serious allegations in this case and petitions were provided. They every opportunity to support those allegations with credible, direct testimony and they failed to do so. That's clearly wrong. They were not afforded every opportunity. The children were not allowed to testify. The aunt who was asked, what did the children say, was not allowed to testify as to that. So, no, they were not allowed every opportunity. They were giving a considerable amount of opportunity within the regulations before the I.J. They were not on the witness list and that's why the I.J. denied them in part. The I.J. was also concerned about the level of credibility that was already presented to him in the testimony and was concerned about putting children on the stand to rehabilitate the parents' credibility. And these are these are not teenagers. They're children. They were eight and six at the time of the alleged incident. And their testimony is, even if even if credible, is not necessarily probative of what happened and would have reflected. Counsel Judge Goulder, you know, if the two children say their mom was raped in front of them and you view them as credible. Why wouldn't that be probative? Well, the the evidence submitted in this case thus far on that issue are some psychological reports that were submitted to the board after the fact. And so there's an issue with the fact that they come in after the fact and didn't present any of this before the immigration judge. There was no offer of proof. There was no declarations provided to the immigration judge. And so all we have right now is we're dealing with these psychological reports. Well, I don't understand that. The wife says she was raped, didn't she? That's what the wife says. That didn't depend on the reports. That was a testimony. Well, the question is, would the children have supported their mother's testimony? I don't think they do, because. Why not? Because on page 192 of the record. They were not heard from. So how do you know what they would have done? Well, that evidence was submitted to the board and the board. No, no, no. How do we know what they would have testified? They were permitted to testify. We we don't know. Well, let's say it does not know. They were denied the opportunity to testify. That's a due process offense. But go ahead with your argument. They were denied the opportunity to testify. Why do you say that? I'm sorry. Why do you say they were not just denied? They were denied. They were denied. They were not allowed to testify. And so that's a due process violation. No, it's why isn't it? Because they have to establish prejudice. They have to establish what? Prejudice. Prejudice. Here are people, percipient witnesses of a rape who were denied the opportunity to testify in support of their mother's application and in support of their own. How can that not be prejudicial? Because the parent's testimony was extremely inconsistent. Oh, no, no, no. With the. Oh, you know, you've got to sit back, Mr. Gannon. You know, you're there. You I know you have to defend the case you're giving us, but it's a really ridiculous case. The government has a sad case. I understand your concerns, but I respectfully disagree. For instance, the cousin, the incident with the cousin, it is material to the claim because it forms a basis of an overall religious persecution. But specifically in the transcript, he says, did you experience any difficulties taking the cousin to the hospital? He says, no. Oh, you've gone off on that one. But I'm concentrating on the rape, which is the single most religious thing. But the husband can't testify about the rape because he wasn't there. Yeah, but he was there after she was released. And that testimony. Went to the doctor and then went to the clinic. And that testimony is completely inconsistent. What? It's completely inconsistent, not only with each other, but with the asylum application. No, it all works together if you just give them a break and understand people don't spell out everything at once. Details come out as they're examined. Well, I think the question is the evidence that the details that were before the immigration judge at the time of the hearing. That's what the IJ had before him. And there's a record compelled to counsel counsel counsel. Let me ask you a question. I want to ask you a question on that, please. Did the wife testify to the IJ that she was raped in the presence of the kids? Yes, I believe both times. So if she said she was raped in front of her kids eyes, then isn't it hard for you to say that if the kids were believed, they would have nothing relevant to say? I mean, how could the IJ not think they might have something pertinent to say in the light of what the wife said? Well, I think the because the wife's testimony was inconsistent as to the rape in and of itself in the asylum application, she says that she was only raped once in the in the testimony. She says she was raped twice. And that is an inconsistency. You know, the wife's the wife's testimony has other inconsistencies in it, but with respect to what the kids can establish. They there's they can only establish the fact of the rape. It doesn't cure the remaining inconsistencies that are in the record. And the details of the wife's rape is is somewhat considerably. Can you can you tell me where in a written application the wife says she was raped only once? I don't have that record site with me, Your Honor. But that's that would be very useful to me, because I I don't recollect that she said in unambiguous terms, I was raped only once or I was raped once. There's a declaration in here from the husband who just says that the wife was raped. Are you relying on something else? If I'm not mistaken, that's the only declaration in the record. And they both testified that they prepared the declaration together. Well, what I'm asking you, where in this declaration do you find something that says I was raped, the wife was raped only once? I don't. I don't know if I have that record site on me, Your Honor. Well, it's going to be in paragraph twenty five. That sounds about that sounds about right, but I don't have a record with me. You know, you don't have the record with you. No. Well, you'll get it. You don't have it there. No, Your Honor. You came to court without it. Yes, Your Honor. Amazing. Well, I. Is that the way the government treats the Court of Appeals? No, Your Honor. Not at all. Your Honor, the the record, the record has been lost by the AUSA that handled this case. It's been so you don't have it in your possession. That's correct. Oh, that's a shameful state of affairs. So the AUSA has lost the record? The U.S. Attorney's Office. This was a a farmed out case and the briefs were submitted in 2005. Have you read the record? No, Your Honor. Oh, this is a very sad situation. What what office do you work with? I'm sorry? What office? Where are you located? I'm with the Office of Immigration Litigation in D.C. You came from D.C. and you couldn't get a copy of the record? Your Honor, I was I was just recently assigned this case. I wasn't. How recently? Two weeks ago. Well, it's just a terrible mess on the part of the agency. If you had called our clerk's office and said, I don't have a copy of the record, the clerk, our clerk's office would have given you a copy of the record. Well, that and for future reference, I apologize that I did not do that. I did not think to do that. But I mean, how can you possibly come in here and argue about what's in the record if you have not read the record? I've read the transcripts and I've read the briefs and I've read the administrative decisions. So you've read the entire transcript? Yes, I have. And how did you get that? That was with the file that the materials that were given to me. But you didn't read the the underlying declaration provided by the by Mr. Morgan? No, Your Honor. Because you didn't have that. But a fair amount, of course, of the credibility determination, as is often the case in these in these cases, rests upon discrepancies or non-discrepancies between the written application and the testimony. And I agree. And the transcript actually does a very good job of explaining what the declaration says. And that's what I'm going to say. That's the problem. Sometimes it does not. And I understand. Well, let this be a lesson not only for you, but I'm afraid for the government, that if it if it expects to present a case properly to us, it has to have a lawyer standing up in front of us who is familiar with it. With the record, we read the record and you should read the record, too. Yes, Your Honor. Your Honor, I see I'm essentially out of time, but in closing, I believe that there are numerous inconsistencies with the record in the testimony and they support the IJ's adverse credibility determination. And the record does not compel the reversal. Well, you can't even say that because you don't know the record. Thank you. Your Honor, I just wanted briefly to address that when the immigration judges excluded the children's testimony, he did not say they were too young or incompetent. He just said he didn't have time to hear them. That's really the only reason he ever gave. And the proffer of evidence had said the children will take about 10 minutes per child. That's correct. And also the BIA is requiring us to produce what it is that they would have said. But we are, in fact, missing that record. It's not in the record. We don't know what it is. And and this Court has held previously that due process could be found and inferred even without showing what the petitioner or the witnesses would have testified because we do not have it available. And in this case, also, even if any inconsistencies were present, they were properly explained or did not go to the heart of the actual claim. We're very consistent about the specific harm they suffered and on what basis and what was said to them, what was done to them. All of those things were very consistent and very detailed. And therefore, whatever inconsistencies were pointed out and specifically narrowed by the BIA should not be, should not serve as a proper basis for credibility determination. And counsel here, counsel, am I correct that there's nothing in the record that would indicate that if the children had testified, they would have been saying something contrary to their mom's story? No, Your Honor, nothing in the record shows that. In fact, the psychological evaluations that the BIA did accept and review actually were all the children and the wife were found credible by the psychologist and they stated so. And any of the minor inconsistencies are explainable by some of the effects of post-traumatic stress disorder. The, all the testimony, at least some bits of it that were provided in the psychological evaluation are very consistent between all three Petitioners. Okay, thanks. And so that concludes that argument. Thank you, Your Honor. You know, Ms. Nacrasova. Yes, Your Honor. You know, I always look up the educational record and I see you attended Moscow University. Yes, Your Honor, for my undergrad. Well, you certainly have adjusted to the United States extremely well. Thank you, Your Honor. And where was the law school you went to, Oak Brook? It's in Fresno, California. In Fresno. Well, you've certainly mastered the whole situation. Thank you, Your Honor. Okay, thank you very much. The case of Morgan versus Mukasey is now submitted for decision.
judges: Noonan, W. Fletcher, Gould